UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

No. 1:21-cr-00040

v.

HON. ROBERT J. JONKER
Chief United States District Judge

LEESA BETH VOGT, a/k/a "Lis Bokt,"
a/k/a "Moose,"

    Defendant.

_____/

## PLEA AGREEMENT

This constitutes the plea agreement between Leesa Beth Vogt and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1.     <u>The Defendant Agrees to Plead Guilty.</u>    The defendant agrees to plead guilty to Count 19 of the Indictment. Count 19 of the Indictment charges the defendant with structuring in violation of Title 31, United States Code, Section 5324(a)(3), (d).

2.     <u>The Defendant Understands the Crime.</u>    In order for the defendant to be guilty of violating Title 31, United States Code, Section 5324(a)(3), (d) the following must be true:

    a.    First, the defendant engaged in acts of structuring.

    b.    Second, the defendant knew that the financial institutions involved were legally obligated to report currency transactions in excess of $10,000.

    c.    Third, the defendant acted with the intent to evade this reporting requirement.

   d. Fourth, the defendant did so while violating another law of the United States or as part of a pattern of illegal activity involving more than $100,000 in a 12-month period.

The defendant is pleading guilty because the defendant is guilty of the charge described above.

  3. <u>The Defendant Understands the Penalties.</u> The statutory maximum sentence that the Court can impose for a violation of Title 31, United States Code, Section 5324(a)(3), (d) is the following:

   a. not more than ten years of imprisonment;

   b. not more than three years of supervised release;

   c. a $500,000 fine; and

   d. a $100 mandatory special assessment.

The defendant agrees to pay the special assessment at or before the time of sentencing unless the defendant affirmatively demonstrates to the Court that she lacks the ability to pay.

  4. <u>Supervised Release Defined.</u> Supervised release is a period of time following imprisonment during which the defendant will be subject to various restrictions and requirements. The defendant understands that if she violates one or more of the conditions of any supervised release imposed, she may be returned to prison for all or part of the term of supervised release, which could result in the defendant serving a total term of imprisonment greater than the statutory maximum stated above.

  5. <u>Asset Forfeiture and Financial Accountability.</u> The defendant agrees to forfeit all right, title, and interest in all virtual currency accessible from wallets associated with two Trezor devices seized from The Geek Group on December 21, 2018, comprising at least

0.365 BTC. The defendant admits that Christopher Boden used the Trezor devices to commit the structuring offense charged in Count 19 and that the Trezor devices and the 0.365 BTC represent property traceable to the offense. The defendant consents to the entry of a preliminary order of forfeiture at or before the time of sentencing forfeiting the two Trezor devices and the bitcoin contained therein. The defendant further agrees to the entry of a forfeiture money judgment in the amount of $62,711, which represents the money involved in the offense to which she is pleading guilty.

      6.    <u>Factual Basis of Guilt.</u>    The defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing, and which does not include all of the facts underlying the defendant's guilt:

      a.    The defendant was the executive director at The Geek Group. There she worked with the President, Christopher Allan Boden, a/k/a "Captain," a consultant, Daniel Reynold DeJager, a/k/a "Daniel Reynold," a/k/a "Daniel Miester," a/k/a "Danichi," and Jeremy Swink, among others. Swink was the defendant's subordinate, and she directed Swink as part of her responsibilities at The Geek Group.

      b.    The defendant deposited proceeds from the sales of bitcoin at The Geek Group in a Chase Bank account with account number ending in 6810. The defendant intentionally deposited less than $10,000 each day that deposits were made for the purpose of avoiding the bank filing a currency transaction report. The defendant directed Swink to do the same.

      c.    In total, the defendant deposited, directed the deposit of, or aided and abetted the deposit of, more than $100,000 in a 12-month period, which included November

2017, as part of a pattern of illegal activity. The defendant also made the deposits while violating other laws of the United States, namely conspiracy to operate an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 371 and 1960, and operating an unlicensed money transmitting business, in violation of 18 U.S.C. § 1960.

        d.      During November 2017, Vogt made, supervised, or aided and abetted 56 ATM deposits at Chase Bank totaling $62,711, each consisting of currency not exceeding $10,000. The deposits were made at branches in Grand Rapids, Michigan. When the defendant personally made the deposits, she notified her co-defendants on Facebook that the deposits were made. When Swink made the deposits, he notified the defendant and the other co-defendants on Facebook that the deposits were made. The defendant knew that the deposits were to be used by DeJager to purchase more bitcoin, which he would then transfer to Boden to sell, or for other staff members at The Geek Group to sell.

    7.    <u>The United States Attorney's Office Agrees.</u>

        a.      <u>Dismissal of Other Counts/Charges.</u>    The U.S. Attorney's Office agrees to move to dismiss the remaining counts of the Indictment against the defendant at the time of sentencing. The defendant agrees, however, that in determining the sentence the Court may consider the dismissed counts in determining the applicable range under the United States Sentencing Guidelines ("Guidelines"), where the sentence should fall within the applicable Guidelines range, and the propriety of any departure from the calculated Guidelines range. By this agreement the defendant does not concede that an increased sentence or an upward departure is, in fact, warranted.

b.    Acceptance of Responsibility.    The U.S. Attorney's Office agrees not to oppose the defendant's request for a two-level reduction of her offense level for acceptance of responsibility under Section 3E1.1(a) of the Guidelines. However, the U.S. Attorney's Office reserves the right to object to the defendant's request if it subsequently learns of conduct by the defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the U.S. Attorney's Office will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b).

8.    The Sentencing Guidelines.    The defendant understands that, although the Guidelines are not mandatory, the Court must consult the Guidelines and take them into account when sentencing the defendant. The defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. The defendant understands that the defendant and the defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guidelines range and the sentence to be imposed. The defendant further understands that the Court shall make the final determination of the Guidelines range that applies in this case, and may impose a sentence within, above, or below the Guidelines range, subject to the statutory maximum penalties described elsewhere in this agreement. The defendant further understands that disagreement with the Guidelines range or sentence shall not constitute a basis for withdrawal of the plea.

9.    There is No Agreement About the Final Sentencing Guidelines Range.    The defendant and the U.S. Attorney's Office have no agreement as to the applicable Guidelines

factors or the appropriate Guidelines range.  Both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history category and score, offense level, specific offense characteristics, adjustments, and departures.

      10.    <u>Waiver of Constitutional Rights.</u>    By pleading guilty, the defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court.  As a result of the defendant's guilty plea, there will be no trial.  At any trial, whether by jury or by the Court, the defendant would have had the following rights:

      a.    The right to the assistance of counsel, including, if the defendant could not afford an attorney, the right to have the Court appoint an attorney to represent the defendant.

      b.    The right to be presumed innocent and to have the burden of proof placed on the government to prove the defendant guilty beyond a reasonable doubt.

      c.    The right to confront and cross-examine witnesses against the defendant.

      d.    The right, if the defendant wished, to testify on the defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

      e.    The right not to be compelled to testify, and, if the defendant chose not to testify or present evidence, to have that choice not be used against the defendant.

      f.    By pleading guilty, the defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment, or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

11. **Waiver of Other Rights.**

    a. <u>FOIA Requests.</u>   The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

    b. <u>Hyde Waiver.</u>   The defendant acknowledges, by her voluntary admission of guilt, that the position of the U.S. Attorney's Office in this case is not vexatious, frivolous, or in bad faith, and she hereby disclaims and waives any right to make any claim for attorney fees.

12. <u>The Court is Not a Party to this Agreement.</u>   The defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed. The defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, the defendant cannot, for that reason, withdraw her guilty plea, and she will remain bound to fulfill all her obligations under this agreement. The defendant understands that no one—not the prosecutor, the defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence the defendant will receive, except that it will be within the statutory maximum.

13. <u>This Agreement is Limited to the Parties.</u>   This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal,

state, or local prosecuting, administrative, or regulatory authority. This agreement applies only to crimes committed by the defendant. This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

14. <u>Consequences of Breach.</u> If the defendant breaches any provision of this agreement, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which the defendant would otherwise be entitled under the terms of this agreement. In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed. In such an event, the defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant. The defendant further agrees to waive and forever give up her right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

15. <u>This is the Complete Agreement.</u> This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties. No other promises have been made, nor may any additional agreements,

understandings, or conditions be entered into unless in a writing signed by all parties or on the record in open court.

9/22/21
Date

ANDREW BYERLY BIRGE
United States Attorney

JUSTIN M. PRESANT
Assistant United States Attorney

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

9/21/21
Date

LEESA BETH VOGT
Defendant

I am Leesa Beth Vogt's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

9/22/21
Date

MATTHEW GEORGE BORGULA
Attorney for Defendant

9